STATE OF NORTH CAROLINA v. JOHNNY FRANK HURLEY, JR.

No. 7319SC229

(Filed 23 May 1973)

1. Automobiles § 3— violation of restrictive driving privilege — intent

The operation of a vehicle on a public highway in violation of the conditions of a restrictive driving privlege constitutes a violation of G.S. 20-28 regardless of the intent of the operator.

2. Automobiles § 3— driving while license is suspended — violation of limited driving privilege — sufficiency of evidence

The State's evidence was sufficient for the jury in a prosecution for driving while defendant's license was suspended where it tended to show that defendant had only a restricted driving privilege allowing him to drive a truck "while at work," that defendant was driving an automobile on the public highway at 1:15 a.m. when the service station at which he worked was closed, that the automobile was used as a substitute for the service station's truck which was inoperable, and that, contrary to defendant's contention, his employer had not directed him to drive the station automobile to help anyone start a car.

APPEAL by defendant from *McConnell, Judge,* 23 October 1972 Session of MONTGOMERY Superior Court.

On 26 October 1972 defendant was convicted after trial de novo in the superior court of violation of G.S. 20-28(a), driving while his operator's license was suspended or revoked. The facts are as follows:

State v. Hurley

On 19 August 1970, after having been convicted of driving a motor vehicle while under the influence of intoxicating beverage, defendant was granted a restrictive driving privilege, one of the restrictions of which was that he could operate a truck "while at work." This restrictive driving privilege was effective from 19 August 1970 to 19 August 1971.

At about 1:15 a.m. on 15 May 1971 a State Highway Patrol Officer observed defendant driving an automobile on the public highway. The officer was acquainted with the defendant, recognized him, and stopped his automobile, whereupon the defendant showed the officer his restrictive driving privilege. The defendant said that he was working for Mr. Carlie Batten, owner of a service station, that the car he was driving was owned by Mr. Batten and used in the business, and that the defendant had received a telephone call from Mr. Batten telling him to go to a designated place to help someone start an automobile.

The officer followed defendant to the place where defendant was to aid in starting a car, and upon learning that the defendant did not know which car he was to start or the owner, he took defendant back to the Montgomery County Courthouse. Mr. Batten was called, and he stated that he did not call the defendant and tell him to assist in starting an automobile.

Mr. Batten testified that he closed the service station on the night of 15 May at about 9:30 p.m., that he and the defendant, who was his employee, went to "catch a pony," and that they returned to the station at about midnight, whereupon defendant was left at the station and Mr. Batten went home. When he left for home, the station was unlocked but not open for business. The car defendant had been driving was used in the service station business since the station truck was then inoperable.

*Attorney General Robert Morgan by Assistant Attorney General William F. Briley for the State.*

*Bell, Ogburn & Redding by Deane F. Bell for defendant appellant.*

CAMPBELL, Judge.

Defendant's appeal is directed to the court's failure to grant judgment of nonsuit at the close of all the evidence. How-

State v. Hurley

ever, viewing the evidence in the light most favorable to the State, we feel that the evidence is sufficient to be submitted to the jury.

G.S. 20-179 (b) (4) provides that "Any violation of the restrictive driving privileges . . . shall constitute the offense of driving while license has been revoked as set forth in G.S. 20-28." In order to convict a person of a violation of G.S. 20-28 such person must have: (1) operated a motor vehicle; (2) on a public highway; and (3) while his operator's license or operating privilege was lawfully suspended or revoked (or in violation of a restrictive driving privilege, G.S. 20-179 (b) (4) ). *State v. Newborn,* 11 N.C. App. 292, 181 S.E. 2d 214 (1971).

Knowledge or intent is not a part of the crime as set out in the statute. A person has no right to drive upon the highways after his driving privilege has been revoked, and it makes no difference what the person's intentions are in so doing. *State v. Teasley,* 9 N.C. App. 477, 176 S.E. 2d 838 (1970) ; *State v. Tharrington,* 1 N.C. App. 608, 162 S.E. 2d 140 (1968).

[1]  Further, G.S. 20-179 (b) (4) speaks of "any violation," not just knowing or wilful violations of the conditions of a restrictive driving privilege. Therefore, if the defendant was not "at work" when he drove the automobile on 15 May 1971 while his restrictive driving privilege was effective, then he is guilty of violation of G.S. 20-28 regardless of his intent, or whether he thought he was "at work." The doing of the act itself is the crime, not the intent with which it was done.

The restrictive driving privilege which defendant had was for a "truck" and the fact that the truck at the station was inoperable did not extend the privilege to the substitute automobile.

[2]  According to the State's evidence the defendant's employer closed his business to the public at 9:30 p.m. and he did not reopen it. Further, the employer did not direct defendant to drive the station automobile that night to help anyone start an automobile. The evidence viewed in the light most favorabe to the State tends to show that at 1:15 a.m. on 15 May 1971 the defendant drove a motor vehicle on the public highway of North Carolina while not "at work," in the course of his employer's

business and not under any of the other restrictive provisions. The evidence of the violation was sufficient to go to the jury.

No error.

Judges PARKER and HEDRICK concur.